UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
LARRY JOHNSON,                                  :

                   Plaintiff,          :          **REPORT AND RECOMMENDATION**

      -against-                              :          03 Civ. 5276 (DLC)(KNF)

CHARLES GREINER, SUPT.,              :
WILLIAM J. CONNOLLY, DSS.,
J. McNAMARA, SGT.,                       :
W. MACK, SGT.,
GLENN GOORD, COMM. OF DOCS,  :
DONALD SELSKY, DIR. OF SHU.,
                          :
                Defendants.
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DENISE L. COTE, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff Larry Johnson ("Johnson"), proceeding pro se, brings this action, pursuant to

42 U.S.C. §1983, against defendants Charles Greiner ("Greiner"), Sing Sing Correctional Facility

Superintendent, William J. Connolly ("Connolly"), Sing Sing Correctional Facility Deputy

Superintendent, J. McNamara ("McNamara"), Sing Sing Correctional Facility Sergeant, W.

Mack ("Mack"), Sing Sing Correctional Facility Sergeant, Glenn Goord ("Goord"), New York

State Department of Correctional Services Commissioner, and Donald Selsky ("Selsky"), Special

Housing Inmate Disciplinary Program Director, alleging his constitutional rights were violated

when, inter alia: (1) Connolly presided at his Tier III disciplinary hearing[1] while at the same time participating in an investigation about him; (2) Connolly denied him the right to call hearing witnesses; (3) he was assaulted by several correction officers; (4) the misbehavior report, based on which he was punished, was insufficient and vague; (5) the defendants conspired against him, by singling him out for disciplinary action, because of his popularity with the prison population; and (6) the defendants retaliated against him because he would not cooperate with them by spying and reporting on other inmates.  Before the Court is the defendants' motion for summary judgment, made pursuant to Fed. R. Civ. P. 56.  The defendants contend: (a) the plaintiff's liberty interest was not implicated by his placement in the Special Housing Unit ("SHU"); (b) the plaintiff received due process; (c) although ultimately reversed, the hearing officer's decision was supported by some evidence; (d) the plaintiff failed to state a claim of conspiracy; (e) the plaintiff failed to state a claim against Mack; (f) the plaintiff failed to state a claim against Greiner; (g) the plaintiff failed to state a claim against Selsky; (h) Goord should be dismissed from the action because there is no respondeat superior liability under 42 U.S.C. § 1983; (i) a failure to follow state law, regulations, and/or directives, without more, is not a constitutional violation; (j) the Eleventh Amendment protects the defendants, in their official capacities, from suits for damages; and (k) they are shielded from liability, in an action brought against them in their individual capacities, by the defense of qualified immunity.  The motion is addressed below.

## II. BACKGROUND

Johnson alleges that, in December 1999, he was an inmate in the custody of the New

---

[1] Tier III hearings are "used for the review of the most serious violations of institutional rules."  Walker v. Bates, 23 F.3d 652, 654 (2d Cir. 1994); see New York Compilation of Codes, Rules and Regulations (" NYCRR"), Title 7, § 270.3, 301.2 and 254.7.

York State Department of Correctional Services at Tappan ("Tappan"), an annex to Sing Sing

Correctional Facility ("Sing Sing"), and employed as an Inmate Liaison Committee

Representative ("ILCR").  He alleges that, on or about December 3, 1999, a suspicion search was

conducted of his personal property and cubicle, while he waited outside.  A document listing

names of correction officers was reported to have been found, among Johnson's personal

property, which resulted in Johnson being restrained, stripped and searched.  After the search,

Johnson was transported from Tappan to Sing Sing.  The following day, Johnson inquired about

his personal property and learned it had been sent for a more extensive search, pursuant to an

order  by Greiner and Connolly.  Johnson alleges he was served with a misbehavior report on

December 4, 1999, charging him with harassment, sex solicitation and possession of

unauthorized contraband.  He alleges further that a hearing was held in connection with that

misbehavior report the following morning, which was dismissed due to a lack of evidence

supporting the charges.

On December 5, 1999, Johnson was served with another misbehavior report charging

him with: (i) participating in and urging others to participate in actions detrimental to facility

order; and (ii) engaging in conduct involving threats of violence.  The misbehavior report, signed

by McNamara, stated that "[i]nformation gathered in an ongoing investigation into inmate group

actions designed to disrupt the order of the facility, has identified this inmate as urging others to

join this action and indicating that violence may result if they do not participate."  Johnson

asserts that the investigation was conducted by Connolly and McNamara.

A Tier III disciplinary hearing was scheduled concerning the December 5, 1999

misbehavior report.  Johnson selected Mack to serve as his inmate assistant at the hearing and to

3

help prepare his defense.  Johnson asked Mack, among other things, to interview witnesses, to

obtain written statements from anyone who had knowledge about the matter, to obtain

documentary evidence, including unusual incident reports, memoranda, reports, video tapes and

photographs, supporting the charges against him.  Johnson alleges that, during his interview with

Mack, he discovered that Connolly was in an adjoining room and that the door connecting that

room with the room where the interview was conducted was open, so that Connolly could hear

Johnson's conversation with Mack.  Johnson asserts he made an objection about that to Mack but

nothing was done to address his concerns.  Subsequently, Johnson refused to sign a form

("assistance form") acknowledging the assistance Mack rendered to him.

Johnson's disciplinary hearing, presided over by Connolly, was held on December 13, 16

and 21, 1999.  At the hearing, Johnson pleaded not guilty to the charges against him.  On the first

day of hearing, Johnson requested witnesses, and the hearing was adjourned accordingly.  It

appears from the transcript of the hearing that, when the hearing resumed, only one of the

witnesses requested by Johnson, Correction Officer Acevito, testified.  The correction officer

stated he had never heard Johnson threaten or recruit any inmates to participate in a work

stoppage or a demonstration.

McNamara testified against Johnson and explained that he had been conducting an

investigation, from November 1999 to December 1999, of a planned mass demonstration by

inmates.  At the hearing, he produced a memorandum, addressed to Connolly, in which he

indicated that a confidential source informed him that an unnamed inmate, during ASAT

meetings and in his housing unit, urged other inmates to protest "Corrections, Parole and

Governor Pataki's policies" and threaten them with violence if they refused to participate.

4

Johnson alleges that, after this memorandum was presented to Connolly and to him, he was told that Connolly would meet with McNamara in a private session to review information McNamara had obtained from the confidential informant.

Johnson challenged the credibility of the confidential informant and testified that there was no evidence against him, except that provided by the informant, to which he was not made privy.  Johnson also protested McNamara's memorandum was too vague and general to support the allegations leveled against him and could apply to anyone.  Johnson alleges he testified that the text McNamara had used in Johnson's misbehavior report was the exact text he used in misbehavior reports lodged against a dozen or more inmates, all lacking inmates' names, dates and housing locations.  Johnson asked Connolly to remove himself as the presiding officer at his disciplinary hearing due to Connolly's involvement in the ongoing investigation about which McNamara testified.  Johnson alleges that, at that time, Connolly made an off-the-record statement to him concerning the alleged inmate demonstration.  Johnson requested that two additional witnesses, each a correction officer, be summoned to the hearing.  Therefore, the hearing was adjourned.

Connolly determined that two correction officers Johnson requested as witnesses were not available.  He noted that Johnson wanted these witnesses to testify whether they had heard him threaten to retaliate against any inmates if they fail to join in the alleged demonstration to disrupt the facility.  Connolly found that testimony from these witnesses was not necessary because if the officers had heard any threats, they would have issued corresponding misbehavior reports, and none was issued.

Johnson was found guilty of the charges against him based on: (i) the information

supplied by the confidential informant, as relayed by McNamara during the private hearing session; (ii) McNamara's testimony and written reports concerning Johnson's involvement in a group action to disrupt the order of the facility.  He was sentenced to 18 months in the SHU, with a loss of privileges, 18 months recommended loss of good time, and loss of packages, commissary and telephone privileges.  Johnson was also removed from his ILCR position.

On January 11, 2000, a discretionary review of Johnson's disciplinary hearing was conducted by the First Deputy Superintendent.  He affirmed the hearing and the disposition.  On January 13, 2000, Johnson appealed the disciplinary hearing decision to the Commissioner, New York State Department of Correctional Services.  In his appeal form, Johnson asserted that, on December 21, 1999, and upon entering the SHU, he was deprived of his due process rights because, inter alia: (1) he was assaulted by three correction officers, who confiscated and deliberately destroyed his personal property, including his appeal form, disposition document and various other documents and legal research material concerning the appeal; (2) his misbehavior report was deficient, vague and served untimely; (3) charges preferred against him were fabricated; (4) his inmate assistant, Mack, failed to fulfill his duties; (5) the hearing officer participated in the investigation that led to the disciplinary charges; (6) the hearing officer made bias statements to him; (6) the confidential information used against him was hearsay and was part of a scheme to make him a scapegoat; and (7) he was sentenced based on incomplete and unreliable evidence.  On February 18, 2000, each component of Johnson's disciplinary penalty was reduced from 18 months to 9 months.

On June 16, 2000, the Acting Director, Special Housing/Inmate Discipline reversed the superintendent's hearing because the tape of the hearing was incomplete, as the voices of

witnesses indicated as having testified were not on the tape.  He ordered the records containing references to the hearing to be expunged.  As a result of the reversal, Johnson's good time credit was restored.

By the time the superintendent's hearing determination was reversed, Johnson, who had been transferred to the Upstate Correctional Facility, had spent approximately six and one-half months in SHU confinement.  He alleges that, during that time, he suffered, among other things, serious emotional distress and mental anguish.  In addition, the plaintiff contends he underwent psychiatric treatment.  After his SHU confinement expired, Johnson filed the instant action.

### III. DISCUSSION

*Summary Judgment*

Fed. R. Civ. P. 56 (c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'  An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 106 S. Ct. 2505, 2510 [1986]).  When considering a motion for summary judgment "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."  L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998)(citations omitted).

The moving party bears the burden of showing that no genuine issue of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Once the moving party has satisfied its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.  "Summary judgment in favor of the party with the burden of persuasion, however, is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  Hunt v. Cromartie, 526 U.S. 541, 553, 119 S. Ct. 1545, 1552 (1999).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts."  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis in the original).  The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Id., at 256, 106 S. Ct at 2514.  "The moving party is 'entitled to a judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2552.

Where, as here, a litigant appears before the court pro se, that litigant's submissions should be read liberally and interpreted so as "to raise the strongest arguments that they suggest."  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(citation omitted).  However, this does

not mean that the pro se litigant is released from the typical requirements of summary judgment.

A "bald assertion" made by the pro se litigant that is not supported by evidence will not be

sufficient to overcome a motion for summary judgment.  See Lee v. Coughlin, 902 F. Supp. 424,

429 (S.D.N.Y. 1995).

*Section 1983 Claim*

In order to enter judgment on a claim made under 42 U.S.C. § 1983, "for an alleged

violation of procedural due process, a court must find that, as the result of conduct performed

under color of state law, the plaintiff was deprived of life, liberty, or property without due

process of law." Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996).  It is undisputed that

Connolly was acting under color of state law when he conducted Johnson's disciplinary hearing.

Determining whether a prisoner has received procedural due process requires a two-prong

inquiry: "(1) whether the plaintiff had a protected liberty interest in not being confined []; and, if

so, (2) whether the deprivation of that liberty interest occurred without due process of law." Id.

at 351-52.

The defendants contend Johnson failed to establish the liberty interest prong of the

relevant inquiry because he failed to "identify any condition of confinement that was 'atypical or

significant.'"   "A prisoner's liberty interest is implicated by prison discipline, such as SHU

confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life.'" Palmer v. Richards, 364 F.3d 60, 64 (2d Cir.

2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 [1995]).  "Disputes

about conditions [of confinement] may not be resolved on summary judgment, but where the

conditions are undisputed, the Sandin issue should be resolved by the court as a matter of law."

Id. at 65 (internal citations omitted).

The Second Circuit Court of Appeals, recognizing that both duration and conditions of confinement are relevant factors to be considered by a district court in determining whether the prisoner endured an "atypical and significant hardship," requires a court, where the confinement is of an intermediate duration between 101 and 305 days: (a) to develop a detailed record of the conditions of the confinement relative to ordinary prison conditions; and (b) to make a fact-intensive inquiry, "examining 'the actual circumstances of SHU confinement' in the case before it without relying on its familiarity with SHU conditions in previous cases." Id. at 64-65. Whether the conditions of confinement "constitute an atypical and significant hardship requires that they be considered in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." Welch v. Bartlett, 196 F.3d 389, 393 (2d Cir. 1999).

The plaintiff's confinement in SHU, for approximately six months, is undisputed.  It is also undisputed that, during his confinement in SHU, the plaintiff had: (a) one hour recreation, daily; (b) the opportunity to receive visitors; (c) showers daily; (d) three meals in his cell daily; (e) limited access to the law library; (f) the opportunity to send and receive letters; (g) the opportunity to earn telephone calls; (h) access to a cell-study program; and (i) access to library books and magazines.  The defendants contend "the record as developed by the parties is sufficiently detailed" for the court to determine whether the plaintiff established a liberty interest existed, of which he was deprived.  They contend further the plaintiff failed to establish a liberty interest existed, of which Johnson was deprived, because he did not "allege that the conditions of

[his] SHU confinement were different from those ordinarily found in SHU or that the conditions of [his] imprisonment were 'substantially more grave' than those ordinarily experienced in the general prison population."

The plaintiff stated, in an affidavit submitted in opposition to the defendants' motion for summary judgment, that "there is a genuine dispute between the parties as to the specified controverte[d] material facts concerning whether plaintiff's [d]ue process rights [were] violated and whether plaintiff can identify a liberty interest protected by the Due [P]rocess clause of which he was deprived."  He averred that, upon his arrival at SHU: (a) he was assaulted and abused orally by Correction Officers Haarst, Bacola and Buerube at Sing Sing; (b) he was ordered to strip in front of a female correction official, and his objection to this was ignored; (c) his personal property, including the copies of two misbehavior reports, at issue in this case, the disposition rendered from the first misbehavior report and other documents related to the preparation of his administrative appeal, were destroyed by Correction Officers Haarst and Bacola; (e) he was threatened and abused orally by correction officers who processed him upon his arrival at the Upstate Correctional Facility; (f) he was deprived of the opportunity to earn college credits from a Sing Sing based masters degree program; (g) he was deprived of the opportunity to participate in mandatory vocational, school and rehabilitation programs provided by the correctional facility; and (h) he was forced to wear a state-issued uniform at all times, even during visitation hours and religious or family festivals.

The defendants contend, in their reply to the plaintiff's affidavit, that, while the plaintiff may have a claim against those persons who are not defendants who allegedly assaulted him, he submitted "no evidence to support the proposition that assaults by staff were expected by

defendants to be part of a SHU sanction" or that the defendants "were aware of or sanctioned such conduct (or alleged destruction of certain papers) or that it resulted from their policies, practices or customs."  They respond further to the plaintiff's averments by contending: (1) the presence of a female correction captain during the plaintiff's strip-search had nothing to do with the plaintiff's SHU status; (2) the alleged abuse Johnson received upon arriving at the Upstate Correctional Facility "suggests no conduct peculiar to SHU;" (3) the plaintiff failed to offer "evidence that he was engaged in a college program when he entered SHU or that any deprivation was more than a temporary delay in participation;" and (4) the plaintiff failed to identify "the family or religious festivals he missed or explain how missing them was an unusual or irreparable hardship."

The defendants have not addressed, within the context of the "atypical and significant hardship" standard, the issues of: assault, exposure to a female during the plaintiff's strip-search or deprivation of personal property, all alleged in the plaintiff's complaint and averred in his affidavit.  In their reply, the defendants have not contradicted these averments or those pertaining to the inability of the plaintiff to earn college credits or to participate in mandatory programs offered by the correctional facility, made by Johnson in his affidavit.

The plaintiff's affidavit raises genuine issues of material fact concerning the conditions of his confinement, including his admission to SHU.  The defendants have not addressed the comparability of the conditions complained of by the plaintiff, such as, for example, the deprivation of personal property, and the conditions imposed on prisoners in general population, and those in administrative and protective confinement, assuming these types of confinements are imposed in the ordinary course of prison administration.  See Palmer, 364 F.3d at 65-66.  The

defendants failed to explain why the alleged deprivation of personal property or the temporary

delay in being allowed to take advantage of educational opportunities is not a genuine issue of

material fact in a circumstance where an analysis of those issues is necessary for: (i) determining

whether the plaintiff's conditions of confinement constitute an "atypical and significant

hardship;" and (ii) establishing whether the plaintiff possessed a liberty interest of which he was

deprived, an essential element of the plaintiff's Section 1983 claim, which may affect the

outcome of the plaintiff's action.  Where the severity of the deprivation imposed, and not only

the duration of the plaintiff's confinement is a factor that is considered in establishing "atypical

and significant hardship," the defendants have the burden of demonstrating that the facts

concerning the conditions of confinement and their severity, complained of by the plaintiff, are

undisputed.  The Court finds that the defendants have not met their burden.  Genuine issues of

material fact exist with respect to the conditions of Johnson's confinement and the severity of the

deprivation about which he complained.   Where the facts concerning the conditions of

confinement are reasonably in dispute, the issue of "atypical and significant hardship," as it

pertains to the plaintiff's confinement conditions, cannot be resolved by the court through a

motion for summary judgment.

*Claims Against Defendants in Their Individual Capacities –Qualified Immunity*

The doctrine of qualified immunity protects state officials from liability for civil damages

for discretionary acts performed in the course of their duties "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." McClellan v. Smith, 439 F.3d 137, 147 (2d Cir. 2006)(quoting Harlow v.

Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 [1982]).  A right is clearly established if:

"(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable [person in the defendant's position would] have understood from the existing law that [his] conduct was unlawful.'" <u>Luna v. Pico</u>, 356 F.3d 481, 490 (2d Cir. 2004)(citation omitted). Summary judgment dismissing a claim based on the affirmative defense of qualified immunity may be granted if the court finds that: (a) the asserted right(s) was not clearly established at the time of the alleged violation; or (b) "the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." <u>In re State Police Litig.</u>, 88 F.3d 111, 123 (2d Cir. 1996). The Second Circuit Court of Appeals has explained that, because qualified immunity is a defense, the court is "not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995). "Since qualified immunity is an affirmative defense, the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." <u>Varrone v. Bilotti</u>, 123 F.3d 75, 78 (2d Cir. 1997).

The defendants contend that, "as has been demonstrated []none of the defendants violated plaintiff's 'clearly established statutory or constitutional rights of which a reasonable person would have known' and they should, therefore, be dismissed from this action." Except for quoting the law governing the qualified immunity defense, the defendants failed to present any facts or evidence, in support of their defense, to demonstrate to the Court that the defendants'

acts were reasonable in light of the clearly established law at the time of the misconduct Johnson attributed to them.  The defendants' conclusory statement, that they have demonstrated in their Memorandum of Law that the defendants did not violate the plaintiff's clearly established rights, does not satisfy the burden imposed on them of showing their conduct was objectively reasonable.  It appears that the defendants' use of the phrase "as has been demonstrated," refers to the arguments made, through their Memorandum of Law, that: (a) the plaintiff failed to establish a liberty interest exists, of which he was deprived; and (b) even if the plaintiff established the existence of a liberty interest, he received all the process that was due because: (i) he was given notice of the disciplinary charges; (ii) the essence of the testimony he planned to elicit from two unavailable witnesses was construed in the plaintiff's favor; (iii) he received a written decision; and (iv) the officer presiding at his hearing was not biased.  Absent from the defendants' submissions is an explanation of what fact(s) or evidence supports the elements of their qualified immunity defense.  The defendants cannot satisfy their burden by grounding their qualified immunity defense argument on the assertion that there was no constitutional violation.  See McCardle v. Haddad, 131 F.3d 43, 51-52 (2d Cir. 1997).  Accordingly, the Court finds that, since the defendants failed to establish the elements of their affirmative defense, qualified immunity, they are not entitled to summary judgment based on that defense.

*Conspiracy Claim*

The defendants contend the plaintiff's conspiracy claim should be dismissed because he failed to plead any facts demonstrating the existence of an agreement or concerted action by the defendants.  Furthermore, according to the defendants, Johnson failed to provide any details regarding time, place and the alleged effect of the conspiracy.  In his complaint, the plaintiff

asserted prison officials conspired against him when, while conducting a "witch hunt," they singled him out for disciplinary charges, because of his popularity among the prisoners, and used him "as a scapegoat as a way of weeding out" those who were a potential threat to the order and safety of the facility.  In support of his conspiracy claim, the plaintiff submitted exhibits to demonstrate that the defendants were informed about a lock down at the Green Haven Correctional Facility, due to a work stoppage, and that a possibility existed for that information to reach the prisoners housed at the plaintiff's correctional facility.  The exhibits show that the plaintiff's correctional facility was also placed in lock down status after five rounds of ammunition, planted by a correction officer, subsequently charged with filing a false report and offering a false instrument for filing, were found in an inmate access area.

In order to defeat a motion for summary judgment on a Section 1983 conspiracy claim, a plaintiff must demonstrate that a factual dispute exists concerning the elements of conspiracy: (1) an agreement between two or more state actors to act in concert to inflict an unconstitutional injury; and (2) "an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Vague, conclusory or general allegations that the defendants have conspired to deprive the plaintiff of his constitutional rights are insufficient, and may lead to a dismissal.  See Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).

The plaintiff has stated, in a conclusory fashion, that the defendants have conspired to violate his constitutional rights by targeting him for disciplinary charges because he was popular among the inmates.  Even when interpreted liberally, as it must be, the plaintiff's complaint, his affidavit and the attached exhibits fail to set forth any facts demonstrating the existence of an agreement between the defendants to act in concert to deprive him of his constitutional rights, or

that an overt act was committed in furtherance of that goal.  The absence of any specific factual allegations establishing the existence of a conspiracy militates in favor of granting the defendants summary judgment on the plaintiff's conspiracy claim.

*Claim Against Mack – Adequacy of Assistance*

In his motion, Mack contends the plaintiff failed to state a constitutional violation claim against him because neither an inmate-assistant privilege nor "evidence of a knowing violation of same" exists.  Mack contends further, that: (a) leaving the door ajar when discussing the plaintiff's case with him, while Connolly conducted another hearing in an adjoining room, did not amount to a constitutional violation because no evidence exists that Connolly heard the conversation or that anything he may have heard prejudiced the plaintiff; (b) although the plaintiff claims now that Mack failed to provide him with certain documents and to interview potential witnesses, in his administrative disciplinary appeal, he alleged only that Mack failed to interview Correction Officers Hicks and Benedito.  However, Mack maintains that claim must fail because Connolly concluded that the two officers "would have had no information to implicate plaintiff" because the record shows the plaintiff did not attend ASAT meetings and that is the fact the plaintiff wanted to elicit from the officers; and (c) the plaintiff was not prejudiced by any deficiencies in Mack's assistance.

The plaintiff asserts Mack deprived him of his right to prepare his defense by failing to discharge his duty as an inmate assistant by obtaining evidence and testimony from witnesses that would support the plaintiff's defense.  The plaintiff contends he requested that Mack: (a) interview any inmates, correction officers and ASAT staff from his housing area who had any personal knowledge, information or facts concerning any verbal or written statements made or

any actions involving his urging or recruiting inmates to participate in a demonstration;

(b) furnish him with an inmate rule book and a copy of the Department of Correctional Services'

Directive Chapter V; (c) obtain any copies of unusual incident reports about him; (d) obtain any

and all videotape recordings supporting the charges against him; (e) obtain any existing

documents concerning an ongoing investigation of his participation in any action to disrupt the

order of the facility; and (f) obtain the names of the persons who ordered the investigation of

him.  The plaintiff asserts he met with Mack after the first day of his disciplinary hearing to

inquire about the information he had requested previously, but, at the end of the meeting, he was

"handed [only an] inmate rule book and a copy of directive 4932/chapter V. and none of the other

requested information was giv[en] to [him]."

Where an inmate has a potential liberty interest at stake, he is entitled to the procedural

due process protections afforded a prisoner in the disciplinary hearing context.  These include:

(1) a written notice of the disciplinary charges against him; (2) the opportunity to call witnesses

and present documentary evidence; (3) a fair and impartial hearing officer; (4) a hearing

disposition supported by some reliable evidence; and (5) a written statement of the facts that

support the disposition and the reason for any disciplinary action taken.  See Kalwasinski v.

Morse, 201 F.3d 103, 108 (2d Cir. 1999); Luna, 356 F.3d at 487-488.

In order to provide an inmate, confined pending a Tier III disciplinary hearing, a

meaningful opportunity to defend against the charges lodged against him, the Department of

Correctional Services' regulations provide for the assignment of an inmate assistant.  The inmate

assistant's role is, among other things, "to interview witnesses and to report the results of his

efforts to the inmate," as well as to "assist the inmate in obtaining documentary evidence or

written statements which may be necessary." See 7 N.Y.C.C.R. §§ 251-4.1.(a)(4), 251-4.2; Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988)("Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges.").  Meaningful discharge of the assistant's duties, in compliance with the procedural requirements, is necessary to satisfy the due process to which an inmate is entitled in disciplinary proceedings against him.  See Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (an assistant must act as a "surrogate-to do what the inmate would have done were he able."); Wolff v. McDonnell, 418 U.S. 539, 566-71, 94 S. Ct. 2963, 2979-82 (1974).  At a minimum, the assistant's duty includes "gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses."  Eng, 858 F.2d at 897-898.

Contrary to Mack's contention, the record demonstrates that, in his administrative appeal from the disciplinary hearing decision, the plaintiff asserted Mack's failure to carry out his duties to assist him in preparing his defense by failing to: (i) secure the oral or written statements from Correction Officers Benedito and Hicks that would have contradicted the confidential informant's information, based upon which the plaintiff was found guilty; (ii) interview several inmates from his housing unit, whose statements could have discredited the confidential informant; (iii) obtain copies of ASAT attendance sheets, which would have demonstrated that he never attended ASAT meetings; and (iv) obtain unusual incident reports for the period between November 21, 1999, and December 5, 1999, as requested by the plaintiff.  Moreover, the record demonstrates the plaintiff argued, in his administrative appeal, that Mack violated his due process rights when he told him that "all the information [he needed] will be given [to him] at the hearing."

19

The plaintiff's averments, that Mack failed to provide documentary evidence related to the charges against him, including videotapes, and documents related to an ongoing investigation concerning him that he requested, are not contradicted by Mack.  The assistance form, although not entirely consistent with the plaintiff's assertions of what he requested of Mack, reflects that the plaintiff presented a significant number of evidentiary requests to Mack.  The record does not demonstrate that Mack reported the results of his investigation, if any, to the plaintiff and Mack does not offer any evidence of what, if anything, he reported about the result of his investigative efforts.  Furthermore, Mack does not address the plaintiff's contentions, that all the witnesses and documentary evidence he requested would have discredited the confidential informant and demonstrated his innocence, except by stating, in a conclusory fashion, that the plaintiff was not prejudiced by any deficiencies in the assistance Mack rendered to him.  The Court is mindful that a document indicating the plaintiff did not attend ASAT meetings was included with the defendants' motion.  However, the inclusion of that document with the motion does not demonstrate that the document was provided by Mack to the plaintiff in response to the plaintiff's request for documentary evidence.  Where, as here, the record is devoid of any evidence showing that Mack attempted to interview witnesses and gather evidence requested by the plaintiff, and that he reported to the plaintiff the result of any investigation he conducted in response to the plaintiff's requests, the Court cannot conclude that no genuine issues of material fact exist with respect to Mack's duty to provide meaningful assistance to the plaintiff.

However, it would appear that, in the Second Circuit, the adequacy of the inmate assistant's performance is subject to harmless error analysis.  See Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991).  In Powell, state correction officers appealed from a district court order

directing, among other things, reversal of the outcome of an inmate's disciplinary hearing because, although it caused no harm to the inmate, a hearing officers' misstep violated the court's injunctive order.  See Powell, 953 F.2d at 745, 749-50.  The Second Circuit Court of Appeals found that, absent a pattern of violations of the court's injunctive order, it was "entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial."  Id. at 750.  The Second Circuit  Court of Appeals made the following analogy:

> If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, see Arizona v. Fulminante, 499 U.S. 279, 111 S. Ct.. 1246 [] (1991); Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 [] (1967), surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.

Powell, 953 F.2d at 750.

Some district courts have relied on the above analogy, interpreting it as a requirement that a harmless error analysis be applied in the context of a summary judgment motion in a Section 1983 action containing a claim of inadequate inmate assistance at a disciplinary hearing.  See, e.g., Pilgrim v. Luther, No. 01 Civ. 8995, 2007 WL 233203, at *4-5 (S.D.N.Y. Jan. 24, 2007); Marino v. Humphrey, No. 05 Civ. 6571, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006); Gates v. Selsky, No. 02 CV 496, 2005 WL 2136914, at *6 (W.D.N.Y. Sept. 2, 2005)(citing to Section 1983 case Samuels v. Selsky, No. 01 Civ. 8235, 2003 WL 22439793, at *12 [S.D.N.Y. Oct. 27, 2003] which relied on a habeas corpus case involving a claim of loss of good-time credit as a result of a disciplinary hearing, Louis v. Ricks, No. 01 Civ. 9368, 2002 WL 31051633 [S.D.N.Y. Sept. 13, 2002]).

This reliance is misplaced.  Powell did not involve a summary judgment motion on a Section 1983 claim.  The Second Circuit Court of Appeals explained that its "fundamental disagreement with the District Court in reversing the outcome of [the inmate's] disciplinary hearing concerns the remedy imposed for violations of the injunction's requirements."  Powell, 953 F.2d at 750.  It expressed no opinion concerning a claim for damages in a Section 1983 action caused by a due process violation resulting from an inadequate inmate assistance's performance or whether harmless error analysis is required at the summary judgment stage in such an action.  If the Second Circuit intended to require that a harmless error analysis be performed in such circumstances, it did not indicate so.  It also failed to indicate what appellate standard for harmless error analysis it believes would be appropriate at the summary judgment stage in a Section 1983 action: the one applied on direct review, articulated in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967), requiring the state to prove beyond a reasonable doubt that a federal constitutional error that affects substantial rights was harmless, or the one applied in federal habeas corpus proceedings, articulated in Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993), requiring the prisoner to prove that the error resulted in actual prejudice, or something else.

Unlike the circumstance where an application for a writ of habeas corpus has been made, the grant of which directly impacts a conviction, a Section 1983 action for damages alone does not affect the plaintiff's conviction.  See Nelson v. Campbell, 541 U.S. 637, 646-47, 124 S. Ct. 2117, 2124-25 (2004).  Absent clear guidance from appellate courts that are binding upon this one, the Court does not find the application of harmless error analysis appropriate where, as here, on a summary judgment motion, the Court already determined that genuine issues of material

fact exist with respect to the inmate assistant's duty to provide meaningful assistance to Johnson.

Even if the Court were to apply a harmless error analysis, it would find that the error in the instant case was not harmless because genuine issues of material fact exist concerning the impact of the inmate assistant's performance on the outcome of disciplinary proceeding. Under Chapman, Mack failed to meet his burden of demonstrating that a deficiency in his performance as Johnson's inmate assistant did not contribute to the outcome of the plaintiff's disciplinary hearing. Under Brecht, the plaintiff met his burden by showing that genuine issues of material fact exist concerning the prejudice suffered by him as a result of the error. Accordingly, the Court finds that dismissing the plaintiff's claim against Mack is not warranted.

*Claim Against Greiner*

The plaintiff contends "the facts will prove" that Greiner and his executive team collaborated to single him out for disciplinary action because Greiner believed, erroneously, the plaintiff was involved in disruptive actions detrimental to the safety and security of the facility. Greiner maintains the plaintiff's claim against him should be dismissed because Johnson has failed to present any facts supporting his allegation that Greiner singled him out for disciplinary action.

The Court agrees with Greiner. Even when interpreted liberally, Johnson's allegations, that Greiner and his executive team targeted the plaintiff for disciplinary action because he was suspected of being involved in disruptive activities, without more, is not sufficient to defeat a motion for summary judgment. Moreover, as was discussed earlier in this writing, the plaintiff has failed to state a conspiracy claim. Johnson has not offered any evidence, in support of his claim, from which a reasonable juror could return a verdict in his favor. Therefore, a dismissal

of the claim made against Greiner is appropriate.

*Claim Against Selsky*

Selsky contends the plaintiff failed to state a claim against him by failing to demonstrate any personal involvement by him in the alleged constitutional violations, other than the modification of the plaintiff's SHU penalty from 18 to 9 months, which, without more, is not a constitutional violation. The plaintiff asserts Selsky is liable to him because Selsky acted "with deliberate indifference in response to [his] initial appeal" and he disregarded valid issues that the plaintiff raised on his initial appeal.

The plaintiff made no factual allegations in his complaint against Selsky and his affidavit is devoid of any facts evidencing what the basis of his claim against Selsky is or that Selsky was personally involved in any of the constitutional violations alleged by the plaintiff to have occurred. The record shows the only act in which Selsky was personally involved was reducing the plaintiff's disciplinary penalty. Reducing a prisoner's disciplinary penalty, without more, does not amount to deliberate indifference to the prisoner's constitutional rights. To establish such a claim requires a showing that a defendant knew of an alleged constitutional violation and disregarded the risk of injury to a plaintiff resulting from it. See Farmer v. Brennan, 511 U.S. 825, 835-48, 114 S. Ct. 1970, 1977-84 (1994). Therefore, the Court finds that the plaintiff's allegation, that Selsky acted with deliberate indifference to his constitutional rights through his response to Johnson's initial appeal, is unsupported by the record evidence. This militates in favor of dismissing the claim Johnson lodged against Selsky.

*Claim Against Goord*

Goord contends the plaintiff's claim against him should be dismissed because: (i) no

24

respondeat superior liability exists in a Section 1983 action; and (ii) the plaintiff has failed to prove that Goord was personally involved in any of the alleged constitutional violations.  In particular, Goord notes that Johnson has not established that he: (a) participated in citing Johnson for committing a disciplinary infraction(s); (b) failed to remedy a wrong; (c) created a policy that allowed a constitutional violation to occur; or (d) was grossly negligent in managing his subordinates.  The plaintiff maintains Goord is liable to him because he "acted with deliberate indifference in response to plaintiff's initial appeal" and he disregarded valid issues the plaintiff raised on his initial appeal.

The doctrine of respondeat superior does not impose liability under Section 1983 on a supervisory official for a constitutional violation(s) committed by his subordinate(s), unless the plaintiff demonstrates the defendant's personal involvement in committing the violation by showing: (a) a direct participation in the alleged constitutional violation; (b) a failure to remedy the wrong, after being informed of it through a report or appeal; (c) the creation of an unconstitutional policy, based on which the violation occurred; (d) the level of supervision of the wrongdoers was grossly negligent; or (e) a deliberate indifference to the rights of the plaintiff manifested by a failure to act on information indicating that constitutional violations were occurring.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In support of the instant motion, Goord submitted a memorandum of law in which he relied on Williams v. Smith, 781 F.2d 319 (2d Cir. 1986), to demonstrate that the plaintiff failed to make factual allegations or present evidence to satisfy Section 1983's liability standard, as articulated in that case.  However, Goord relied on an outdated standard.  The plaintiff asserted Goord is liable to him based on his deliberate indifference to the plaintiff's allegations of

constitutional violations that were raised in his administrative appeal.  This should have alerted

Goord to the current standard applicable to claims of supervisory liability under Section 1983.

However, Goord failed to address the matter in his Reply Memorandum of Law.

Nevertheless, the record demonstrates that, on January 13, 2000, the plaintiff appealed

from his disciplinary hearing disposition to Goord and that, based on that appeal, his penalty was

reduced.  The record also demonstrates that, "in response to a letter of reconsideration," Goord

reviewed and reversed the disciplinary hearing determination based upon which the plaintiff was

penalized.  The record is devoid of any evidence demonstrating that Goord exhibited deliberate

indifference to the plaintiff's constitutional rights by failing to act on the information indicating

that a constitutional violation(s) had occurred or was occurring.  As a result, no basis exists for

the claim Johnson has made against Goord.

*Claims Against Connolly and McNamara*

Connolly and McNamara maintain Johnson asserted they violated various state

regulations and directives.  According to the defendants, absent a showing that their conduct rises

to the level of a constitutional violation, Johnson's claims against Connolly and McNamara

should be dismissed.  Moreover, the defendants contend the plaintiff's claims against

McNamara, to the extent they rest on a theory that the disciplinary charges he preferred against

Johnson were false, must fail because the plaintiff has not alleged McNamara had a retaliatory

motive.

The Court has already found that genuine issues of material fact exist concerning the

plaintiff's liberty interest, thus indicating that Johnson's due process rights might have been

violated.  Moreover, the plaintiff has alleged retaliatory motive in his complaint, although not

artfully.  Johnson has asserted he was used as a scapegoat "simply because he wouldn't cooperate with prison officials by spying and whistleblowing on the [i]nmate population."  Therefore, the Court finds that dismissing the claims against Connolly and McNamara is not warranted.

*Claims Against the Defendants in Their Official Capacities*

The defendants contend that, to the extent the plaintiff seeks money damages against them in their official capacities, his action should be dismissed, because claims made for damages, under Section 1983, against government officials acting in their official capacities are considered claims against the State and are barred by the Eleventh Amendment.  The Court agrees.  See Davis v. New York, 316 F.3d 93, 101-02 (2d Cir. 2002).  Therefore, the defendants are entitled to the relief they seek through this motion on those of Johnson's claims made against the defendants in their official capacities.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends that the defendants' motion for summary judgment be denied in part and granted in part.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Denise L. Cote, 500 Pearl Street, Room 1040, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Cote, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007.  FAILURE TO FILE OBJECTIONS

WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-

CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d

298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy

v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York          Respectfully submitted,
      July 16, 2007

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Larry Johnson
Steven N. Schulman, Esq.

28